UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

EDWARD BYAM, AKEEM MONSALVATGE,
and DERRICK DUNKLEY,

                  Defendants.
----------------------------------------------------------X

**MEMORANDUM & ORDER**

12 CR 586 (RJD)

DEARIE, District Judge.

Defendants Edward Byam ("Byam"), Akeem Monsalvatge ("Monsalvatge"), and Derrick Dunkley ("Dunkley"), were charged in a five-count superseding indictment pertaining to the armed robbery of Pay-O-Matic check cashing stores in Queens, New York. Defendants submitted motions to suppress certain evidence obtained during the investigation of these charges. Following a suppression hearing on June 18, 2013, this Court granted in part, and denied in part, the motions addressed at the hearing. For the reasons that follow, we denied the outstanding motions made on submission.

### A. *The Fruits of the August 23, 2012 Search*

Byam moves to suppress evidence seized during the execution of a search warrant for his apartment on August 23, 2012—two days after he was arrested there. He argues that this evidence is the "fruit" of the illegal, warrantless search of his apartment conducted on the day of his arrest. We disagree.

First, we ruled that the agents were justified in conducting a protective sweep of Byam's apartment when he was arrested. Transcript of Proceedings, July 8, 2013 ("Tr.") at 3. And although we suppressed certain evidence improperly seized during the protective sweep, Tr. 3-6, we find that the subsequent search warrant application contained sufficient "untainted" evidence

to establish probable cause. See Lamaan v. United States, 973 F.2d 107, 115 (2d Cir. 1992) (recognizing that where evidence is obtained as a result of an application for a search warrant that contains both tainted and untainted evidence, the warrant may be upheld if the untainted evidence, standing alone, establishes probable cause). Specifically, Agent Winston's affidavit included: (1) a description of a Pay-O-Matic employment application, partially filled out with Byam's information, found in plain view during the protective sweep; (2) records of a purchase made by "Edward Byam" of "Mac the Guy" high-end, special effects masks, which appear to match the masks used in the robbery; (3) the fact that a photo used in the commission of the robbery was traced to a Walgreens and then to a receipt showing that the photo had been printed for "Byam, E."; (4) a description of the unseasonable clothing Byam was wearing upon his arrest in August—two pairs of pants and a dark, long-sleeved shirt—from which one could infer that he was on his way to commit a robbery; and (5) testimony that the agents observed the strong smell of bleach in Byam's apartment when he was arrested (in light of the fact that the robbers used a substance that smelled like bleach during the robbery). Because we are confident that a magistrate judge would have issued a search warrant on the basis of this untainted evidence, we uphold the search warrant's validity.

We also find that the August 23, 2013 search was a sufficiently independent source of evidence because the government was likely to seek the warrant for Byam's apartment notwithstanding the illegal aspects of the August 21 protective sweep. See Murray v. U.S., 487 U.S. 533, 542 (1988) (noting that a search pursuant to a warrant would not be considered a genuinely independent source of information if the agents' decision to seek the warrant was prompted by what was seen during an initial, illegal entry). Here, the pre-existing evidence, the Pay-O-Matic application found in plain view during Byam's arrest, and the unusual observations

made upon Byam's arrest no doubt prompted the government to seek a search warrant of the apartment.

Accordingly, Byam's motion to suppress the fruits of the August 23, 2013 search is denied.

### B. *Monsalvatge's Challenge to the Search Warrant*

Defendant Monsalvatge challenges the validity of a search warrant for historical cell-cite information issued by Magistrate Judge Ramon Reyes, Jr. on June 29, 2012. Specifically, he points to a "false and misleading" error in paragraph (7) of Agent Winston's supporting affidavit, which lists his phone number ("The Monsalvatge phone") as the number printed on the incriminating Walgreen's receipt and "subscribed to Jodi Ferguson and Edward Byam." In reality, the number on the back of the receipt was Byam's number ("The Byam phone"). Monsalvatge claims that without this erroneous information the affidavit lacked probable cause and moves to suppress any evidence obtained in that search.

Even if a search warrant proves invalid, the exclusionary rule barring illegally obtained evidence from introduction at trial does not apply where an agent reasonably relies on a defective warrant. United States v. Leon, 468 U.S. 897, 922 (1984). Monsalvatge argues that two of the recognized exceptions to this "good-faith" rule apply here, warranting suppression: (1) where the issuing magistrate has been knowingly or recklessly misled, and (2) where the application is so lacking in the "indicia of probable cause" as to render reliance upon it unreasonable. Id. at 923. We are not persuaded.

There is no indication that the error was anything more than typographical, and no evidence that it affected the decision of Magistrate Judge Reyes. Notwithstanding the isolated error in paragraph (7), the affidavit properly distinguishes between the Monsalvatge phone and

the Byam phone throughout the document. Furthermore, it would be nonsensical to read the warrant as suggested by the error, because it would indicate that the Byam phone was calling the Byam phone. We are not persuaded that Judge Reyes was misled.

We also find that Judge Reyes's decision to issue the warrant was not influenced by the error because there is satisfactory evidence supporting probable cause elsewhere in the affidavit. It is clear, in the context of the rest of the document, that the main basis for the warrant was the unusual level of correspondence between the Byam phone and the Monsalvatge phone, both on the day of the robbery (22 calls) and the in the two weeks preceding it (89 calls). Even if we remove the erroneous characterization in paragraph (7) of the affidavit, there is more than an "indicia" of probable cause supporting reasonable reliance on the warrant.

For the forgoing reasons, Monsalvatge's motion to suppress is denied.

### C. *The Government's Motion for Reconsideration*

Finally, we deny the Government's motion for reconsideration of this Court's decision to suppress certain evidence seized in the search of Byam's apartment on August 21, 2013.

The standard applicable to a motion for reconsideration in criminal cases has not been clearly established; no guidance can be found in the Federal Rules of Criminal Procedure or the Court's Local Criminal Rules. Accordingly, courts in this district borrow principles outlined in Local Civil Rule 6.3. See United States v. James, 2007 WL 914242, at *3 (E.D.N.Y. 2007); United States v. Mottley, 2003 WL 22083420 (S.D.N.Y. 2003). According to Rule 6.3, a motion for reconsideration should inform the court of "the matters or controlling decision which counsel believes the court has overlooked." A motion for reconsideration is not an opportunity to "reargue those issues already considered when a party does not like the way the original motion was resolved, nor may a party [] advance new facts, issues or arguments not previously presented

4

to the court." James, 2007 WL 914242, at *3. Here, however, the Government's motion does exactly what the Rule prohibits.

The Government attempts to reargue issues already considered by challenging the Court's finding with respect to the inevitable discovery issue. The Government's argument is twofold: (1) that the Court's decision was based on the assumption that Byam's girlfriend had access to his apartment; and (2) that the Court may have overlooked Agent Winston's testimony regarding Byam's assertions that he lived alone in the apartment and that nobody else had a key to it. These assumptions are incorrect.

The Government misunderstands the standard in this case. The Court's ruling did not rely on specific assumptions, but rather, on the finding that the Government did not meet its burden of establishing that the evidence would inevitably have been discovered by a preponderance of the evidence. See Nix v. Williams, 467 U.S. 431, 444 (1984). In this Circuit, the inevitable discovery exception to the exclusionary rule applies "only where a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." United States v. Heath, 455 F.3d 52, 60 (2d Cir. 2006). It is not enough that there is a "reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct." Id.

We are not required to find that the Government's burden is satisfied on the basis of Agent Winston's testimony that Byam claimed he lived alone and was the sole key-holder. Byam also suggested that his girlfriend could pick up his dog, which raised the possibility that other people may have had access to the apartment. This possibility was not mitigated by any information obtained by the Government. In fact, Agent Winston testified to her lack of

knowledge about the apartment. See Transcript of Suppression Hearing, June 18, 2013, at 237 ("We thought that [the apartment] was one of the potential addresses that [Byam] might live at. We did not know for sure that he lived in the building, and we certainly didn't know where the apartment was. . ."). She also testified to her suspicion that, at the time of his arrest, Byam was on his way to commit another robbery—suggesting that others may have been aware that key evidence was at risk of being detected by the Government. Id. at 183 ("The two pairs of pants and the long sleeve shirt, it occurs to me that he's on his way to commit a robbery. We caught him on his way out the door."). In light of these facts, Byam's assertions regarding access to the apartment are not convincing.

The Court also looked for evidence of any steps the Government took to secure the premises while the search warrant was pending. See United States v. Eggers, 21 F. Supp.2d 261 (S.D.N.Y. 1998) (noting that agents left the house without taking any steps to ensure that evidence would remain there while they sought a warrant even though they did not know whether others (i.e. co-conspirators) had access to the home); United States v. Lavan, 10 F. Supp. 2d 377 (S.D.N.Y. 1998) (emphasizing that there was no risk of disappearance of evidence pending execution of warrant because the apartment was surrounded, and the physical nature of evidence made its destruction or disposal virtually impossible). Here, the record is barren of any facts that would give us a high level of confidence in the security of the apartment. For that reason, we are not confident that critical evidence of past and potentially impending crimes would have been inevitably discovered in Byam's unsecured apartment two days after his arrest.

The Government's motion also advances, for the first time, the argument that the agents were justified in seizing evidence pending the issuance of a search warrant to "obviate the risk of

third party destruction." This argument is unavailing, particularly given the Government's insistence that the evidence was inaccessible to others.

The Government relies on the Second Circuit's decision in United States v. Martin, 157 F.3d 46, 53 (2d Cir. 1998), a case that is clearly distinguishable from this one. In Martin, the Court upheld the warrantless seizure (not the search) of a UPS package en route to defendant because (1) there was probable cause to believe it contained contraband, and (2) the seizure was justified by the "exigencies of the situation." Id. The probable cause arose when the sender of the package informed the police that the package contained stolen goods and identified it by tracking number. Id. Moreover, the Court emphasized that "had UPS delivered the package to defendant, the police would have risked loss or destruction of suspected contraband." Id.

Martin clearly does not apply to the facts of this case. Here, the most incriminating evidence that we suppressed, the Nike bag and its contents, was searched and *then* seized without a warrant. Martin is limited to warrantless seizures. Nor does Martin justify the warrantless seizure of electronics from Byam's apartment. There, the police had a high degree of probable cause (specific information about the contents of the package and a tracking number). Here, the electronics were seized based on mere speculation that they may contain evidence because the robbers used the Internet at some point to buy masks—a much more tenuous justification. Furthermore, we do not see the same exigencies as in Martin, where failing to seize the UPS package containing contraband would dramatically increase the likelihood that evidence would be lost or destroyed. In that case, the Government seized the items to prevent them from reaching a party with a motive to destroy them. Here, the Government seized Byam's property, from his apartment, after he was arrested. The exigencies are also minimized by the fact that Byam was in custody, and the Government had the option to secure the apartment with a modest

investment of manpower to prevent the items from being lost or destroyed while a warrant was promptly obtained.

We also reject the Government's (re)argument that a warrantless seizure of the electronics was justified because it was "immediately apparent" that they were incriminating. The Government defends the "incriminating" nature of the electronics on the basis that the robbers purchased masks for the robbery on the Internet. Permitting any and all electronics to be seized without a warrant merely because a defendant used the Internet or the telephone at some point would impermissibly open the door routinely to warrantless seizures of electronics in almost any criminal investigation.[1]

For the forgoing reasons, the outstanding motions to suppress are DENIED.

SO ORDERED.

Dated: Brooklyn, New York
August __, 2013

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

---

[1] The cases the Government cites upholding the warrantless seizure of electronics in plain view are distinguishable. In those cases, there was probable cause to believe that the devices were direct instruments of a crime. See, e.g., United States v. Abdojan, 871 F. Supp. 2d 95, 101 (N.D.N.Y. 2012) (upholding "plain view" seizure of Blackberry and iPhone during in-home arrest for access device fraud and aggravated identity theft where officers knew defendant had carried out the scheme online); United States v. Delouya, 2005 WL 3244173 (N.D.N.Y. 2005) (walkie-talkie could be seized under plain view theory because of indications that it had been used in a drug smuggling operation).