UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

                   **MEMORANDUM & ORDER**

       -against-              12-CR-586-01 (OEM)

EDWARD BYAM,

                Defendant.

-----------------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

Defendant Edward Byam ("Byam"), who is currently serving a sentence of 32 years and 1 day, moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) ("§ 3582 Motion").[1]  Over ten years ago, Byam, along with others, committed two armed robberies of two different Pay-O-Matic check cashing stores in Queens, New York.  One robbery occurred in 2010 and the other in 2012.  During the commission of each of the robberies, Byam brandished a firearm.  Byam was charged with and convicted of two counts of Hobbs Act robbery and conspiracy to commit the same.  Byam was also convicted of two counts of federal firearms offenses in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("§ 924(c)").

Under the version of § 924(c) in effect at the time, Byam's conviction on multiple § 924(c) charges arising out of the same indictment resulted in a "lengthy mandatory consecutive sentence[], an effect known as 'stacking.'"  *United States v. Campbell*, No. 20-4204-CR, 2022 WL 199954, at *1 (2d Cir. Jan. 24, 2022).  This meant Byam faced a statutory minimum sentence of

---

[1] On October 17, 2022, Byam filed the instant § 3582 Motion, ECF 282, along with a Memorandum of Law in Support of Reduction ("Reduction Memo"), ECF 283-3, and various exhibits.  On November 15, 2022, the government filed a response in opposition ("Gov't Opp."), ECF 289.  On December 2, 2022, Byam filed a reply ("Byam Reply Memo"), ECF 290, and on October 18, 2023, counsel for Byam filed a letter containing supplemental supporting exhibits for consideration ("Byam 10/18/23 Ltr."), ECF 291.  Upon reassignment of the case to the undersigned on October 26, 2023, the Court permitted the parties to file supplemental letters.  *See* Byam Supp. Ltr., ECF 292; Gov't Supp. Ltr., ECF 293.

32 years in prison for the two firearms convictions: seven years followed consecutively by 25 years. He also necessarily faced additional time for the Hobbs Act charges themselves.

In 2014, Byam was sentenced to 32 years of incarceration. Specifically, the sentencing judge sentenced Byam to a period of incarceration of 32 years for the two stacked § 924(c) charges and only one additional day for all three Hobbs Act-related charges. *See* Judgment as to Edward Byam, ECF 160. Byam was 22 years old when he committed the first robbery in 2010, 26 years old when he was sentenced, and has now served over 11 years of his sentence.

On December 21, 2018, the President signed into law the First Step Act of 2018. Pub. L. No. 115-391 (the "First Step Act" or "FSA"). The First Step Act introduced two remarkable changes to federal criminal law. First, the FSA prospectively eliminated so-called "stacking" of § 924(c) mandatory minimum sentences for second or consecutive § 924(c) counts contained in the same indictment. *See* FSA § 403, Pub. L. No. 115-391. Thus, had Byam been sentenced today, his two § 924(c) charges would only accrue 14 years of mandatory sentence time.[2] Second, the First Step Act "marked a sea change in the role of the sentencing judge" when it came to motions for compassionate release[3] sought pursuant to 18 U.S.C. § 3582(c) ("§ 3582"). *United States v. Birkett*, No. 90-CR-1063-24, 2023 WL 4274683, at *3 (E.D.N.Y. June 29, 2023). Prior to the enactment of the First Step Act, the federal Bureau of Prisons ("BOP") held an "absolute gatekeeping authority" on compassionate release motions. *United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). The First Step Act amended § 3582 to allow defendants to apply directly to the district court for a sentence reduction given certain preconditions. *Id.*

---

[2] Today, each § 924(c) charged in an indictment is still subject to a statutory minimum—here, seven years—and each count must be served consecutively. *See* 18 U.S.C. § 924(c)(1)(A)(ii), (D)(ii).

[3] The term "compassionate release" is a "misnomer" as § 3582 "in fact speaks of sentence reductions." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment, but also impose a significant term of probation or supervised release in its place." *United States v. Watts*, No. 92-CR-767 (KAM), 2023 WL 35029, at *7 (E.D.N.Y. Jan. 4, 2023) (citing *Brooker*, 976 F.3d at 237).

2

Byam has now moved for a sentence reduction pursuant to § 3582 as amended by the First Step Act.  He invokes, among other reasons, the FSA's elimination of § 924(c) stacking as an "extraordinary and compelling" reason to reduce his sentence.  For the reasons that follow, the Court grants Byam's § 3582 Motion and reduces Byam's sentence to 16 years.

## BACKGROUND[4]

### A.  Byam's Background

Byam was born Edward Theophilous Byam, III, on February 19, 1988, in Queens, New York.  Presentence Report as to Edward Byam ("PSR"), ECF 131, ¶ 70.  As reported in the PSR, Byam's parents divorced when he was approximately five years old, and he was left with his mother who was "emotionally abusive and neglectful."  PSR ¶¶ 73-74.  Byam completed high school and three years of college.  PSR ¶¶ 85-86.  From his graduation from high school in 2006 to just prior to his arrest in 2012, Byam worked several minimum wage jobs.  PSR ¶¶ 86, 88-93.

Byam has a son, Amir Byam, who lives with his mother, Fatima.  PSR ¶ 75.  As discussed further below, Byam has maintained strong contact with Amir.  *Id.*  At the time of his sentencing in 2014, Byam had a long-term partner of seven years, Jodi Ann.  PSR ¶ 76.  Both Fatima and Jodi Ann wrote in support of leniency as to Byam's sentence.  PSR ¶¶ 75-76; Exhibit E to Byam Memorandum of Law in Support of Reduction ("Support Letters"), ECF 283-7 at Bates Stamp Number ("Bates No.") E003.  Amir also has written in fervent support of a reduction of his father's sentence.  *See* Support Letters at Bates No. E002.

---

[4] The following facts are taken from, among other sources, the Presentence Report; Judge Dearie's October 24, 2022, order reducing co-defendant Akeem Monsalvatge's sentence ("Monsalvatge Reduction Order"), ECF 286; and the Government's Opposition to the Motion to Reduce Sentence ("Govt's Opp."), ECF 289.  A fulsome review of the facts and procedural history of this case can be found in the Judge Dearie's order denying the defendants' respective § 2255 habeas petitions ("Habeas Order"), ECF  266, as well as the Second Circuit's decision in *United States v. Monsalvatge*, 850 F.3d 483, 485-87 (2d Cir. 2017) (direct appeal of convictions).

**B.  The Two Pay-O-Matic Robberies and Criminal Proceedings**

In the early hours of February 24, 2010, Byam and two co-defendants, Akeem Monsalvatge ("Monsalvatge") and Derrick Dunkley ("Dunkley") robbed a Pay-O-Matic check cashing store on Rockaway Boulevard in Queens, New York.  *See* PSR ¶¶ 2-4, 8-9.  The trio was armed with handguns and wearing cloth masks.  *Id.*  Dunkley managed to gain entry to the secure teller area by "crashing" through the ceiling while Monsalvatge came in through the lobby brandishing a handgun.  *See* PSR ¶¶ 9, 32.  Dunkley, however, made the mistake of leaving the secure teller area, thereby locking himself out and leaving the teller by himself.  *Monsalvatge*, 850 F.3d at 486.  Unable to regain entry, Dunkley resorted to crashing through the roof again to re-enter the secure area.  *Id.*  Upon reentering, Dunkley seized cash from the cashier's drawers and beat the teller with a metal chair—striking him over 10 times—after the teller told him he did not know the combination to the safe.  *Id.*  For the most part, Byam acted as a lookout during the 2010 robbery. *Id.* at ¶ 9.  However, at some point Byam entered the lobby of the store and exchanged handguns with Monsalvatge who then pushed a smaller handgun through the teller window to Dunkley who used it to threaten the teller.  *Id.*; *Monsalvatge*, 850 F.3d at 486.  The trio stole over $44,039.73 in cash from the safe.  *Monsalvatge*, 850 F.3d at 486.

The trio's second robbery occurred two years later in February of 2012.  *See* PSR ¶¶ 11-12.  Like before, the group targeted another Pay-O-Matic check cashing store in Queens.  *Id.*  The group gained entry to this Pay-O-Matic by first approaching a teller ("Teller #1") in the parking lot as she arrived to work, and the trio disguised themselves as NYPD officers by wearing real NYPD jackets and NYPD detective-style badges on neck hangers purchased by Dunkley.  *Id.*  All three also donned professional Hollywood-grade special effects masks.  *Id.* at ¶ 12.  In the parking lot, one of the defendants showed Teller #1 several photographs of houses, including one

4

photograph of her own house, at which point Teller #1 understood that the situation was in fact a "hold up." *Monsalvatge*, 850 F.3d at 487.  Teller #1 then convinced the overnight teller inside the Pay-O-Matic ("Teller #2") to let her and the defendants all inside the secure teller area, which had to be opened from the inside.  *See* PSR ¶ 12.  "Inside the teller area, one robber emptied a safe and put the money into a black bag.  The other robber demanded at gunpoint that [Teller #1] and [Teller #2] lie down on the floor." *Monsalvatge*, 850 F.3d at 487.  "The armed robber emptied the teller drawers and splashed the teller counter with a liquid that smelled like bleach.  The three robbers then left the Pay-O-Matic with the cash, driving off in the SUV.  In total, the trio stole $200,755.89." *Id.* (footnote omitted); PSR ¶ 12.  Byam played a more active role in the 2012 robbery.  He purchased the Hollywood special-effects masks and sent them to Monsalvatge's girlfriend's apartment. *Monsalvatge*, 850 F.3d at 491 n.18.  Byam also developed the photographs of Teller #1's house. *Id.* at n.7; PSR ¶ 12.

Byam was arrested at his apartment on August 21, 2012.  *See* PSR ¶ 16.  On January 4, 2013, a grand jury indicted Monsalvatge, Byam, and Dunkley, charging each of them in a five-count superseding indictment (the "Superseding Indictment") with Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a) (Count One); Hobbs Act robbery on February 24, 2010, in violation of 18 U.S.C § 1951(a) (Count Two); unlawful use of a firearm in a crime of violence in connection with the February 24, 2010 robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Three); Hobbs Act robbery on February 14, 2012, in violation of 18 U.S.C § 1951(a) (Count Four); and unlawful use of a firearm in a crime of violence in connection with the February 14, 2012 robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Five).  *See* Superseding Indictment, ECF 16; PSR ¶¶ 1-7.

Monsalvatge, Byam, and Dunkley were tried together at a jury trial that began July 30, 2013, with the Honorable Raymond J. Dearie presiding.  On August 9, 2013, the jury convicted each of the three defendants on all five counts as charged in the Superseding Indictment.

### C.  Byam's Sentencing

On April 4, 2014, Judge Dearie sentenced Byam to a total of 32 years of imprisonment. *See* PSR at 1; Minute Entry dated 4/14/2014 for Sentencing of Edward Byam ("Byam Sentence"), ECF 159.  Specifically, Judge Dearie sentenced Byam to one day for each of the two substantive Hobbs Act robbery and the Hobbs Act conspiracy count (Counts One, Two, and Four).  *Id*.

Under the version of § 924(c) in effect at the time of his sentencing, Byam's conviction of two § 924(c) counts mandated minimum consecutive custody terms of seven and 25 years respectively.  *See* PSR at Comments; *see id.* ¶¶ 24, 51-53, 99.  For the first § 924(c) count (Count Three), Judge Dearie sentenced Byam to the statutory minimum of 7 years to run consecutively with all counts; for the second § 924(c) count (Count Five), Byam was sentenced to the statutory minimum of 25 years, to run consecutively with all counts.[5]  *Id.*

### D.  Appeals and Post-Sentencing Litigation

All three defendants filed direct appeals of their convictions.  *See United States v. Monsalvatge*, 689 F. App'x 680, 682 (2d Cir. 2017) (summary order).  On May 4, 2017, prior to the enactment of the First Step Act, the Second Circuit affirmed both Byam and Monsalvatge's convictions in their entirety.  However, finding the evidence insufficient as to Dunkley's participation in the 2010 robbery, the Second Circuit reversed Dunkley's conviction as to Count Two (for the 2010 Hobbs Act robbery) and Count Three (the accompanying 2010 § 924(c) firearms count) and remanded the case for resentencing.  *Id.* at 682.  At Dunkley's resentencing, Judge

---

[5] Both Monsalvatge and Dunkley were also sentenced the same day and received identical 32-year sentences.  *See* 12-cr-586-02, ECF 152 (Monsalvatge Sentencing Minutes); 12-cr-583-03, ECF 155 (Dunkley Sentencing Minutes).

Dearie imposed a total custodial term of 108 months, or 9 years.  Dunkley Resentencing Minute Entry, ECF 220.  All three defendants subsequently filed § 2254 habeas petitions which were denied in their entirety by Judge Dearie on March 31, 2022.  *See* ECF 266, 267, 268.

After the passage of the First Step Act, all three defendants also moved for sentence reductions.  *See* ECF 237 (Dunkley, filed 5/9/2019); ECF 274 (Monsalvatge, filed 5/19/2022); ECF 283 (Byam, filed 10/17/2022).  On October 22, 2022, Judge Dearie granted Monsalvatge's motion, reducing his sentence from 32 years to 17 years.  *See* Order Reducing Sentence as to Akeem Monsalvatge ("Monsalvatge Reduction Order"), ECF 284 at 1.  Among other reasons, Judge Dearie opined that, given the change in § 924(c) provided by the First Step Act, "Monsalvatge's sentence and the disparity between the mandatory minimum he is now serving and the mandatory minimum he would face if sentenced today constitute extraordinary and compelling circumstances warranting relief."  *Id.* at 6.  The next day Judge Dearie issued an order directing the government to file its response to Byam's motion to reduce his sentence and stated that "[t]he Court expects that the government's response will take into account the recent Order [] reducing the sentence of Byam's co-defendant Akeem Monsalvatge."  *See* Order dated 10/25/2022.

## APPLICABLE STANDARDS

A court engages in a tripartite analysis when evaluating a "compassionate release" or sentence reduction motion brought pursuant to the First Step Act.  *See Birkett,* 2023 WL 4274683, at *2 ("As the Court has previously explained, whether a defendant is entitled to compassionate release under the First Step Act requires a three-part analysis."); *United States v. Rivers*, No. 03-CR-01120 (FB), 2023 WL 5978094, at *1 (E.D.N.Y. Sept. 14, 2023) (explaining defendant "must satisfy three requirements" in order to qualify for a "reduction pursuant to the FSA").

First, a court must determine whether the movant has "satis[fied his] administrative burden" at the custodial level before moving in federal court.   *Birkett*, 2023 WL 4274683, at *2; 18 U.S.C. § 3582(c)(1)(A).   Second, a court must determine whether "extraordinary and compelling reasons warrant [] a reduction" of the defendant's sentence.   18 U.S.C. § 3582(c)(1)(A)(i); *accord United States v. Wallace*, No. 23-6283, 2023 WL 7986443, at *2 (2d Cir. Nov. 17, 2023).   However, the presence of "extraordinary and compelling circumstances" is not, in itself, enough.   *See Brooker*, 976 F.3d at 237-38 (citing 28 U.S.C. 994(t)).   Third, a court must consider the sentencing factors 18 U.S.C. § 3553(a) (the "§ 3553(a) factors") and any applicable policy statements issued by the United States Sentencing Commission (the "Sentencing Commission").   18 U.S.C. § 3582(c)(2);  *Birkett*, 2023 WL 4274683, at *2.  The Court addresses each part of the analysis in turn.

## DISCUSSION

### A. Administrative Exhaustion

"[A] defendant may go to court 'after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .'"  *Brooker*, 976 F.3d at 233 (*quoting* 18 U.S.C. § 3582(c)(1)(A)).   Byam, *pro se*, submitted his request to the warden of his facility on June 7, 2022, and on July 13, 2022, Mr. Byam's application was denied.  *See* Reduction Memo at Exhibit H (Compassionate Release Request), ECF 283-10 and Exhibit I (Compassionate Release Denial), ECF 283-11.   Further, the government does not dispute that Byam has exhausted his administrative appeal rights. Accordingly, the Court finds Byam has exhausted his administrative rights of appeal.

**B. "Extraordinary and Compelling Reasons" Warrant a Reduction of Byam's Sentence**

The Court next turns to examine whether "extraordinary and compelling reasons warrant such a reduction" of Byam's sentence.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); *accord Wallace*, 2023 WL 7986443, at *2.  Byam asserts the following reasons warrant a reduction in his sentence: (1) the change in the § 924(c) law that would have rendered a lower mandatory minimum; (2) the disparity of his sentence as compared to his co-defendants'; and (3) his own rehabilitation.  *See* Reduction Memo at 12.  Byam also contends that his current age, the "continued role that he has played in his family's life," and his "exemplary record" during his decade-long incarceration also support a reduction in his sentence.  *Id.* at 8-9.  In opposition to Byam's §3582 Motion, the Government argues that a reduction in Byam's sentence predicated on the changes made to § 924(c) by the First Step Act would be an impermissible retroactive application of the First Step Act.  *See* Gov't Opp. 4-6; Gov't Supp. Ltr. at 2.  As Judge Dearie found when the Government raised this argument in opposition to Monsalvatge's §3582 motion, *see* Monsalvatge Reduction Order at 6, the Court finds the Government's argument is without merit for the reasons discussed below.  Accordingly, the Court addresses the merits of Byam's motion.

**1. Changes in § 924(c) Law**

It is undisputed that the "'unstacking' provisions of the FSA do not apply retroactively." *Campbell*, 2022 WL 199954, at *1.  *See United States v. Haynes*, 456 F. Supp. 3d 496, 502 (E.D.N.Y. 2020) ("The First Step Act of course did not make this critical change to § 924(c) retroactive."); *United States v. Watts*, No. 92-CR-767 (KAM), 2023 WL 35029, at *6 (E.D.N.Y. Jan. 4, 2023) ("Section 403 of the First Step Act does not explicitly provide for, nor prohibit, retroactive application and does not provide any automatic or independent relief for those defendants whose sentences involved the stacking of § 924(c) convictions.").  "Instead, a

9

defendant *may apply* to the district court for any such sentence modification relief under 18 U.S.C. § 3582(c)(1)(A)." *Watts*, 2023 WL 35029, at *6 (emphasis added). Byam does not contend that this Court must revisit April 4, 2014, and re-sentence him as if the First Step Act had been effect at that time.[6] Rather, like countless other defendants, Byam asks that the Court consider the "full slate of extraordinary and compelling *reasons*" that his sentence may be *reduced*. *Id.* Chief among these reasons is Congress's affirmative decision to "outlaw" § 924(c) stacking in explicit recognition of the draconianly long mandatory sentences stacking had produced in cases like Byam's. *United States v. Campbell*, 647 F. Supp. 3d 76, 87 (E.D.N.Y. 2022). "Indeed, courts in many districts—including this one—have found that an overly long punishment imposed under the obsolete § 924(c) stacking provision constituted an extraordinary and compelling reason for sentence reduction." *United States v. Reid*, No. 05-CR-596(1) (ARR), 2021 WL 837321, at *6 (E.D.N.Y. Mar. 5, 2021) (granting sentence reduction in a § 934(c) stacking case and opining that under the "obsolete" older version of the law the defendants "was subject to a mandatory 100-year sentence enhancement—tantamount to a death-in-prison sentence—that would not be imposed under today's law.") (collecting cases); s*ee, e.g.*, *Haynes*, 456 F. Supp. 3d at 502, 499 (finding 40 stacked years of a 46 year sentence years warranted in part a finding of exceptional circumstances); *Watts*, 2023 WL 35029, at *6 (same where 82 years were stacked years of a 94 year sentence).

In *Brooker*, the Second Circuit opined the First Step Act was a "monumental" change in federal criminal law as it amended both sentencing calculations and mandatory minimums. *Brooker*, 976 F.3d at 230. The Court joins its sister courts in finding "the Congressional decision to outlaw stacked § 924(c)" constitutes, in part, an "extraordinary and compelling circumstance in

---

[6] Nor would retroactivity make sense. "[T]he Congressional decision not to make the § 924(c) change retroactive spares the courts an avalanche of applications and inevitable re-sentencings, no doubt in many cases that do not feature the same grave characteristics presented here." *Haynes*, 456 F. Supp. 3d at 516.

this case." *Campbell*, 647 F. Supp. 3d at 87; *see Watts*, 2023 WL 35029, at *7 ("District courts in the Second Circuit have also expressly reduced sentences where the defendant's original sentence was enhanced by the § 924 stacking provision.") (collecting cases).   Under the First Step Act, Byam's sentence for the two § 924(c) counts would be 14 years.  Instead, hamstrung by § 924(c) and Second Circuit precedent as it was at the time, Judge Dearie imposed more than double that sentence despite Byam's age and lack of prior criminal history.  Now, taking Congress's legislative rejection of stacking into account, and along with the other factors discussed below, the Court finds the "drastic disparity" between Byam's sentence and the sentence he would receive today is an extraordinary and compelling reason to grant his motion.  *See United States v. Facey*, No. 96-CR-912 (ERK), 2021 WL 3117439, at *2 (E.D.N.Y. July 20, 2021).

## 2.   The 2023 Amendments to the Sentencing Guidelines

If it were not enough that the Court can independently consider a change in law an extraordinary and compelling circumstance for the purpose of § 3582 motions, the Sentencing Commission has now also expressly provided that courts may do so, given certain preconditions.[7] On November 1, 2023, various new amendments to the United States Sentencing Guidelines (the "Guidelines") went into effect.  Of significant import is the amendment of Guideline § 1B1.13 ("§ 1B1.13"), which is the Policy Statement covering applications for a "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)."  *See* Guidelines Manual at 47-51 (Nov. 1, 2023), https://perma.cc/M9E3-P6P7.   Specifically, the 2023 amendment to § 1B1.13 "moves the

---

[7] "The Sentencing Guidelines contain a compendium of Rules, Comments, and Application Notes addressing a number of elements" for the given section. *Harris v. United States*, 293 F. Supp. 2d 259, 271 (S.D.N.Y. 2003), *vacated on other grounds*, 367 F.3d 74 (2d Cir. 2004).  "Application Notes to the sentencing guidelines are included to help courts interpret the intent and meaning of the guidelines." *United States v. Cheng Ah-Kai*, 951 F.2d 490, 493 (2d Cir. 1991). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005).

description of permissible bases for granting a [sentence] reduction, including the catch-all clause, from the Application Notes into the body of the Guidelines." *Birkett*, 2023 WL 4274683, at *4.

Notably, § 1B1.13(b), the sub-section that covers potential circumstances that may be considered "extraordinary and compelling" for the purposes of § 3582, now explicitly includes a provision for an "unusually long sentence." *See id.* at (b)(6).

Specifically, § 1B1.13  provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.*

This provision squarely applies to Byam.  First, there is no question that the sentencing judge believed that the 32-year mandatory sentence he was required to impose was an "unusually long sentence"—so much so that he expressed hope that "[p]erhaps people will begin to take more notice of the excessive punishments required sometimes by these mandatory minimums. And in my view, this is such a case."[8]  *See* Sentencing Tr. 10:24-11:17 ("it is the mandatory minimum that I am required to impose that takes us well beyond what I think is reasonable, notwithstanding the viciousness of these crimes.").  Second, Byam has been incarcerated over 10 years.  Third, the change in § 924(c) law  – specifically, with the elimination of stacking in § 924(c) pursuant to the

---

[8] As has been reiterated, "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release" and thus there is no bar keeping this Court from considering the comments and views of the sentencing judge who presided over the life of the case from indictment to trial to habeas review and had the closest understanding of the facts and circumstances.  *Brooker*, 976 F.3d at 237.

FSA, Byam's mandatory minimum sentence would only be 14 years today as opposed to the 32 years he received.  Here, the additional 18 years (216 months) added by the stacking of the § 924(c) second charge in 2014 produced "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion [was] filed."  USSG § 1B1.13(b)(6).  Given that all these conditions are met, the Court may, and indeed does, consider the FSA's change to § 924(c) law itself as an extraordinary and compelling circumstance warranting a reduction of Byam's sentence.[9]

### 3.  Sentencing Disparity Between Byam and his Co-Defendants

Byam also argues that his disparity between his sentence and Dunkley's sentence imposed after re-sentencing constitutes an extraordinary and compelling circumstance warranting reduction.  *See* Byam Memo at 8, 12-14.

As an initial matter, "many courts have looked to the disparity between co-defendants in granting sentence reduction in § 924(c) stacking cases."  *Reid*, 2021 WL 837321, at *7 (citing *Haynes*, 456 F. Supp. 3d at 499) (other citation omitted); *see, e.g.*, *Campbell*, 647 F. Supp. 3d at 87–88 ("There is also a stark sentencing disparity between Campbell and co[-]defendant Craig Williams, who was convicted after trial of eight stacked sentences (one more than Campbell), initially sentenced to 140 years, and recently granted a reduction to 40 years.").  Additionally, in the traditional § 3553(a) sentencing context, the factors of which the Court must also review as part of this motion, the district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6); *see United States v. Frias,* 521 F.3d 229, 236 n. 8 (2d Cir.2008); *accord United States v. Nguyen*, 508 F. App'x 39, 41 (2d Cir. 2013) (summary order).

---

[9] Byam's individual circumstances are fully considered further below.  *See infra* Part B.4 and Part C.

The Court first compares Byam's sentence to Dunkley's.  On appeal, the Second Circuit determined that the government had failed its burden of proof as to Dunkley's involvement in the 2010 robbery and, accordingly, at his resentencing, no enhanced stacking could possibly apply because there was no second robbery or brandishing that would allow for stacking.  *See Monsalvatge*, 689 F. App'x at 685 (reversing Counts Two and Three).  Therefore, on remand Dunkley was resentenced to a term of 108 months (9 years) for his involvement only in the 2012 robbery.  *See* Dunkley Amended Judgment, ECF 221 at 2.  Specifically, Judge Dearie imposed two years (running concurrently) for the 2012 Hobbs Act robbery counts (both substantive and conspiracy) and seven years (the statutory minimum) as to the § 924(c) charge associated with that robbery, which was to run consecutively to the robbery counts.  *See id.* at 3.  It is undisputed that Byam (and Monsalvatge), unlike Dunkley, remains culpable with respect to his involvement in the first 2010 robbery and brandished a firearm during both robberies.  A jury convicted, and the Second Circuit "affirmed[,] the judgments of conviction of the district court as to Monsalvatge and Byam." *Monsalvatge*, 689 F. App'x at 685.  Thus, based only a comparison with Dunkley, Byam fails to demonstrate any extraordinary and compelling circumstances warranting a reduction given Dunkley's patently different circumstances.[10]

However, the Court reaches a different conclusion when comparing Byam to Monsalvatge. A jury convicted both on all five counts; the judge sentenced both to identical 32-year sentences; the Second Circuit upheld their convictions; and both seek a sentence reduction pursuant the First

---

[10] Further, the out-of-Circuit cases cited by Byam here are distinguishable.  *See* Reduction Memo at 13.  In *United States v. Edwards*, No. CR PJM 05-179, 2021 WL 1575276, at *2 (D. Md. Apr. 22, 2021), the 2014 Drug Amendment to the Sentencing Guidelines as well as the FSA permitted the co-defendant in a drug ring to be resentenced twice as compared to the movant.  In *United States v. Ball*, No. 06-CR-20465, 2021 WL 2351088, at *5 (E.D. Mich. June 9, 2021), the Court found "a change in the law regarding the burden of proof on Nagi's [the co-defendant's] firearm charge that Nagi was ultimately able to be re-sentenced to a new term of incarceration of 20 years" was the circumstance which created a disparity.

Step Act. However, unlike Byam, Judge Dearie reduced Monsalvatge's sentence from 32 years to 17. *See generally* Monsalvatge Reduction Order. To deny Byam's motion here and let him serve out a 32 year sentence while Monsalvatge will be free 15 years earlier for the exact same conduct is unfounded and unjust and provides further mortar to the conclusion that extraordinary and compelling circumstances are present. *See Campbell*, 647 F. Supp. 3d at 87–88. It does not, however, dictate here the *amount* of any reduction, which the Court reserves to its analysis of the § 3553(a) factors.

### 4. Rehabilitation

"The Second Circuit has acknowledged that while rehabilitation 'alone' does not constitute an 'extraordinary and compelling reason,' courts may consider it as a factor in determining if there are extraordinary and compelling reasons for compassionate release." *United States v. Qadar*, No. 00-CR-603 (ARR), 2021 WL 3087956, at *10 (E.D.N.Y. July 22, 2021) (quoting *Brooker*, 976 F.3d at 238). What constitutes "rehabilitation" is left to this Court's broad discretion to determine. As to guidance for evaluating rehabilitation, the Court finds the late Judge Weinstein's sentencing analysis in *U.S. v. Blake* both rigorous and enlightening. *See* 89 F. Supp. 2d 328, 340-48 (E.D.N.Y. 2000). In *Blake*, Judge Weinstein squarely addressed the question of "What is Rehabilitation?" by tracing the history and moral underpinnings of the rehabilitative model of incarceration. While the Court need not repeat all of *Blake*'s insights, it does agree that, at minimum, "rehabilitation requires the court to examine whether a defendant has taken responsibility for his or her actions and acted to reintegrate oneself into a productive society." *Id.* at 346. Courts in this district have also considered the following factors: the movant's maintenance of familial and societal relationships; letters of support both from community members and prison staff; conduct and disciplinary records while incarcerated; and any achievements and education obtained while

incarcerated. *See, e.g.*, *Qadar*, 2021 WL 3087956, at \*10; *Watts*, 2023 WL 35029, at \*12-14; *United States v. Facey*, No. 96-CR-912 (ERK), 2021 WL 3117439, at \*2 (E.D.N.Y. July 20, 2021). Courts also note gains in "maturity" and other "clear signs that [a defendant's] incarceration has had rehabilitative value[.]"  *Birkett*, 2023 WL 4274683, at \*6.

Both subjectively and objectively, Byam has demonstrated significant progress under these indicia of rehabilitation.  In a letter to the Court, Byam "apologized" for his actions and states he is "remorseful."  Support Letters, at Bates EE01.  Byam continues that he was "young and ignorant which is no excuse at all nor [is he] looking to give any excuses to you just an explanation.  [He] was unaware of the residual effects of [his] actions would have due to [his] selfish ways, the pain and anguish to those directly involved and those indirectly meaning the family and loved ones of all parties."  *Id.*  Byam has completed a training in "Victim Impact" and has "been programming and focused [his] time on helping others through teaching and open honest sharing to strengthen all whom [he] come[s] in contact with."  *Id.*

Byam's son Amir and Amir's mother, Fatima, have also provided letters stating that Byam has maintained continuous presence in Amir's life despite his incarceration and is "involved in Amir's schooling and encourages extracurricular activities."  *Id.* at Bates EE002.  Fourteen other family members have echoed Byam's progress in achieving and growing his life skills and praise the attitude Byam has maintained while incarcerated.  *See id.*  It is clear that Byam has maintained connections outside the prison walls and would have a strong support system upon his release. Byam's first cousin, Troy Byam, perhaps summarizes the gestalt of the letters best: Byam has made a "positive transformation, he has been persistent in both his professional and personal development over the course of his sentence."  *Id.* at Bates E019.

The record also demonstrates that Byam has undergone substantial rehabilitation for over a decade, improving himself as it pertains to education, employability, and other social achievements.  Prison staff at FMC Devens also corroborate Byam's character, work ethic, responsibility, and compassion for other inmates.  For example, Byam has been employed as an "inmate companion" on the Memory Disorder Unit ("MDU") where he tends to inmates with dementia, cancer, mental illness, and other disabilities.  *See* Charles-Washington 2022 Letter, ECF 284-6.  Attached to his motion was a letter from Nurse Manager Monique Charles-Washington, dated July 22, 2022, in which she described Byam's character and conduct as follows:

> Mr. Byam consistently demonstrates an [admirable] work ethic, as well as a positive attitude. Mr. Byam requires very little to no supervision in the accomplishment of his daily assignments; and he is very enthusiastic about his work. He understands his responsibilities; and he completes his assignments in a timely manner. . . Mr. Byam always remains calm while assisting them in de-escalating. . . . Mr. Byam communicates properly and respectfully with the unit Correctional Officers as well. Mr. Byam keeps a very safe unit environment for the inmates he cares for. He is definitely a great asset to this program.

*Id.*

Byam has continued to work on the MDU to its great advantage.  As Nurse Manager Charles-Washington recounts in an October 10, 2023, letter, Byam is directly responsible for potentially saving another inmates' life after responding to a choking incident. *See* Charles-Washington 2023 Letter, ECF 291 at 2.  Byam has also maintained a role as a violence-interrupter between inmates.  *See id.*  Further, she states: "Byam is very selfless; and he is not afraid to put himself in danger to help others. . . . Mr. Byam selflessness and quickness of judgment have prevented many injuries on the MDU unit; and had made the unit somewhat safer for the more debilitated inmates." *Id.*

The Court observes that between the 2021 INP, ECF 283-4, when he was transferred from FCI Otisville to FMC Devens, and a follow up INP administered in August 2023 (the "2023 INP"),

ECF 291 at 5-11, Byam has completed anger management programs as advised.  Remarkably, Byam's has no history of violence while incarcerated and he has had only one "Incident Report" in the last 10 years.  *See* 2023 INP at 10.  Byam has participated in numerous classroom studies, including a preparation course for obtaining a commercial driver's license, Spanish, step training for parenting, and many credits devoted to public speaking and Toastmasters. *See id.* at 6.  Byam has amassed a 40-page dossier of other achievement certificates including one for completion a workshop on Victim Impact, one for becoming a certified fitness trainer and typing and one for computing.  *See generally* Achievement Certificates, ECF 283-5.

The Court has carefully reviewed the full record.  Considering the change in § 924(c) law, Byam's stacked sentence which more than doubles the mandatory minimum, the disparity of his sentence compared to Monsalvatge's, and his significant strides towards rehabilitation, the Court finds the totality of the circumstances presented amount to "extraordinary and compelling" reasons to reduce Byam's sentence.  *See Qadar*, 2021 WL 3087956, at *11 ("A confluence of factors may establish extraordinary and compelling reasons in combination.") (cleaned up).

## C.    § 3553(a) Factors & Applicable Policy Statements

Even where a defendant demonstrates extraordinary and compelling circumstances warranting a reduction of a movant's sentence, the district court must consider whether any sentence reduction or release is consistent with the factors set forth in 18 U.S.C. § 3553(a).[11]  18

---

[11] (a) Factors to be considered in imposing a sentence.  The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

U.S.C. § 3582(c)(1)(A); *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (per curiam). A "district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) factors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" *Wallace*, 2023 WL 7986443, at *2 (quoting *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam) (footnote omitted)). When reviewing a motion for a sentence modification, a district court need only "adequately explain the chosen sentence to allow for meaningful appellate review." *United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022) (quoting *Chavez-Meza v. United States*, 585 U.S. 109, 116 (2018)).

As an initial matter, the Court observes that "[m]any of the applicable 3553(a) factors are incorporated in the Court's discussion of extraordinary and compelling circumstances[.]" *Campbell*, 647 F. Supp. 3d at 89.[12] As drawn from the facts stated above, there is no doubt that Byam took part in two violent armed robberies over ten years ago. The first robbery resulted in the beating of a Pay-O-Matic teller with a chair by one of Byam's co-defendants. While the PSR

---

(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
[12] The Government argues that Byam's motion should be denied entirely and takes no position as to any recommended sentence length of a reduction in sentence. *See generally* Gov't Opp.

asserts Byam was generally a lookout, he did hand a co-defendant a gun that was used to threaten

that teller.  Byam's role in the second robbery shows his deeper involvement in a more calculated

armed robbery.  Byam's involvement in 2012 included ordering the special masks used during the

heist and developing the pictures of Teller 1's house that were used to threaten her.  These elements

were crucial to the ultimate success of the robbery.  And, far from being just a lookout this time,

Byam engaged in intimidation predicated on intimations of violence, even though Teller 1 (nor

others) was not physically hurt.

Nonetheless, the Court also considers Byam's relatively young age (between 22 and 24) at

the commission of these crimes and the fact that he had virtually no criminal history—and no

violent criminal history—prior to the robberies.  *See* 18 U.S.C § 3553(a)(1).  As noted by Judge

Rakoff in his comprehensive and thorough review of age, youth, and maturity with regards to

sentencing and sentencing reduction: "A lack of maturity and an underdeveloped sense of

responsibility are found in youth more often than in adults and are more understandable among

the young. These qualities often result in impetuous and ill-considered actions and decisions."

*United States v. Ramsay*, 538 F. Supp. 3d 407, 417 (S.D.N.Y. 2021) (Rakoff, J.) (quoting *Roper*

*v. Simmons*, 543 U.S. 551, 570 (2005)).  "Youths' immaturity – particularly in the context of 'hot

cognition' decisions made in the presence of peers – also lessens the value of deterrence because

adolescents' 'immaturity, recklessness, and impetuosity make them less likely to consider potential

punishment.'"  *Id.* (quoting *Miller v. Alabama*, 567 U.S. 460, 47 (2012)).  While the defendant

discussed in *Ramsay* was 18 years old when he shot into a crowd, *see id.*, the Court finds the same

logic and consideration hold here as other courts have.  *See, e.g.*, *United States v. Golding*, No. 05-

CR-538 (JSR), 2022 WL 2985014, at *2 (S.D.N.Y. July 27, 2022) ("Golding was 20 years old

when he and others committed a very serious drug-related murder. Although slightly older than

the 18-year old defendant in *Ramsay*, Golding was still influenced by the various relevant features of youth that Ramsay identified."). At the time of the robberies, Byam was quite younger than Monsalvatge, who was in his mid-thirties and "may have been a leader in the conspiracy." Reduction Order at 10. Further, Byam's criminal history score on the PSR was zero. PSR ¶¶ 65-66. Prior to the robberies, Byam's only recorded interaction with the criminal legal system arose from a misdemeanor second degree criminal trespass conviction from 2007—when he was 19 years old—for which he was sentenced to "Conditional Discharge and 15 days community service." PSR ¶ 64.

"At the very crux of compassionate release is the recognition that no man is beyond redemption." *United States v. Snype*, No. 02 CR. 939-3 (DC), 2023 WL 4622870, at *12 (S.D.N.Y. July 19, 2023) (Chin, J. sitting by designation) (cleaned up). Despite his involvement in these serious crimes, Byam has shown through his last 11 years of incarceration that his sentence has worked dual purposes as both as an individual deterrent and one that demonstrates a commitment to public safety, compassion for others, and trustworthiness. Now into his mid-30s, Byam has maintained a positive attitude and has offered his skills and talents to help others, including the neediest of the prison population. He has achieved this with a virtually spotless disciplinary record. *Id.* § 3553(a)(2). *See Birkett*, 2023 WL 4274683, at *8 (explaining that the movant's "clean disciplinary record for the past decade reflects that the need to protect the public from him has dissipated") (citing U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders at 3, https://perma.cc/4L27-VRYB (finding that "[o]lder offenders [are] substantially less likely than younger offenders to recidivate following release.")).

The Court now turns to what is the heart of this motion: the sentences available and avoiding the disparity of sentences. 18 U.S.C § 3553(a)(3-4), (6). At the time of the original

sentencing, Judge Dearie imposed a 1-day sentence for the Hobbs robbery and conspiracy charges based upon the 32-year mandatory minimum sentence he was required to impose given the stacked § 924(c) charges.   While it is the undersigned's duty and obligation to impose and reduce sentences pursuant to its own discretion, it is not without helpful guideposts including data provided by national and Circuit-level sentencing statistics and by comparing Byam to Monsalvatge.

"The statistics compiled by the United States Sentencing Commission, for example, show that for fiscal year 2022, the nationwide average and median sentence length for robbery convictions was 106 and 96 months, respectively." *Snype*, 2023 WL 4622870, at *11.  Adjusting the tuner to Byam's own more specific circumstances, the 2022 national average and median sentence length for Hobbs Act robbery for a Category I offender level, like Byam, was 81 (approximately 6.75 years) and 65 months (approximately 5.41 years), respectively. *See* Sentencing Commission, Interactive Data Analyzer,[13] Sentencing Outcomes, Sentence Length, *available at* https://perma.cc/T2AS-KPBF (controlling for Type of Crime and Criminal History Category).  In the Second Circuit, that median is even lower: 33 months on average and 24 months median. *See id.* (additionally controlling for Circuit).  In the 2013 PSR, now issued over 10 years ago, the Probation Department indicated a guideline range of 70 to 87 months for the Hobbs counts, or a maximum of 7.25 years. *See* PSR at Comment at 2.  Dunkley, upon resentencing, was sentenced to only two years (running concurrently) for the two Hobbs Act robbery counts followed by seven years for the firearm count, the statutory minimum, for a total of nine years. *See* Dunkley Amended Judgment.

---

[13] These data points are drawn from the Sentencing Commission's Interactive Data Analyzer ("IDA") which takes data from the Sentencing Commission's "Sourcebook" for the fiscal year 2022.  *See* Sentencing Commission, Sourcebook 2022, *available at* https://perma.cc/89VL-F2GF.  The IDA allows users to recall, *inter alia*, sentencing statistics with the capability to control for various variables such as Circuit, type of crime, and criminal history category, among others.

As discussed above, the maximum concurrent sentence possible for the two firearm brandishing counts under § 924(c) as it stands today would be fourteen years.  *See id.* at (1)(A)(ii).  By nearly all the metrics cited above, Byam's sentence for the Hobbs Act robbery would be subsumed by the two concurrent § 924(c) sentences if he were sentenced under the FSA.  Thus, the primary consideration for the Court is how to account for the § 924(c) counts and any disparities between his co-defendants, namely Monsalvatge.  *See Reid*, 2021 WL 837321, at *7 (explaining that "many courts adjudicating § 3582 motions have looked to the disparity between co-defendants in granting sentence reduction in § 924(c) stacking cases").  Judge Dearie opined in the Reduction Order that "three years of [Monsalvatge's newly reduced sentence] are attributed to Monsalvatge's conspiracy and substantive robbery counts, appropriately reflects the similarities and differences between him and Dunkley."  *Id.*  Thus, given that the two § 924(c) counts are required to run consecutively, and the three years were imposed for the robbery counts, Judge Dearie set no more than the statutory minimum of seven years as to each firearms count.  *See id.* at 1 ("Were [Monsalvatge] sentenced under today's amended § 924(c), Monsalvatge would face a 14-year mandatory penalty.").  The Court sees no reason to depart from this conclusion in Byam's case either.

Further, Monsalvatge and Byam have been convicted on all five counts for the same two robberies.   On October 24, 2022, Judge Dearie reduced Monsalvatge's sentence to 17 years.  In so doing, Judge Dearie noted three explicit differences between Monsalvatge and Dunkley:

- Monsalvatge was in his mid-thirties at the time of the robberies, while Dunkley was in his mid-twenties.
- Monsalvatge had a limited criminal history, while Dunkley had no criminal history.
- Monsalvatge may have been a leader in the conspiracy, while Dunkley was, in my view, a young and somewhat impressionable follower.

Reduction Order at 10 (footnote omitted).

These same differences between Monsalvatge and Dunkley also pertain to Byam, who the Court finds comparably situated to Dunkley for the purposes of this motion only.  Namely, Byam was also younger and in his 20s with nearly no criminal history.  Based on this comparison, today's sentence, two years of which are attributed to Byam's conspiracy and substantive robbery counts, appropriately reflects the similarities and differences between Byam, Monsalvatge and Dunkley.  The Court finds that reducing Byam's sentence to 16 years' imprisonment is sufficient but not greater than necessary to "promote respect for the law," "provide just punishment for [his] offense[s]," and fulfill "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(2)(A), (a)(6).

## CONCLUSION

For the foregoing reasons, Edward Byam's motion for a reduction of sentence is granted, and his sentence is modified to 16 years.  The Clerk of Court is directed to prepare and file the appropriate amended judgment.

**SO ORDERED.**

/s/Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated: April 10, 2024
Brooklyn, New York